[No. D018798. Fourth Dist., Div. One. Sept. 19, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL J. MINOR, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

432

COUNSEL

Debi A. Ramos, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkins, Rhonda L. Cartwright-Ladendorf and Anne Marie Urrutia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TODD, Acting P. J.**—A jury convicted Michael J. Minor of one count of driving under the influence of alcohol or drugs causing injury (Veh. Code,[2] § 23153, subd. (a)) and one count of driving with a measurable blood-alcohol of .08 percent or more causing injury (§ 23153, subd. (b)), counts 2 and 3. The jury acquitted Minor of count 1, vehicular marslaughter without gross negligence (Pen. Code, § 192, subd. (c)(3)), and was unable to reach a verdict on count 4, felony hit-and-run-with-injury (§ 20001). Subsequently, the prosecution moved to have the hit and run count dismissed. The trial court sentenced Minor to the middle term of two years in prison on the section 23153, subdivision (a), conviction. Pursuant to Penal Code section 654, the court stayed a three-year middle term on the other conviction. Minor appeals, contending there were various instructional errors and the trial court coerced the jury to reach a verdict.

FACTS

On December 27, 1991, at 1:20 a.m., Paul Handte was driving westbound on the Coronado Bay Bridge in the slow lane when a large white American-made car passed him traveling 80 to 100 miles per hour. Shortly thereafter, Handte saw the large American car crash into the back of a small silver Honda car. The Honda went out of control and traveled towards the oncoming lanes of traffic.

At roughly 1:25 a.m., Alphonse Pater was driving a bus on the bridge en route to San Diego when he heard a crash and squealing of tires. He saw the Honda "severely bucking or rocking" from front to back coming across the highway toward him. Pater saw the driver of the Honda looking at him in desperation as there was nothing the driver or Pater could do to avoid the inevitable collision. The driver's side of the bus and the driver's side of the

---

[2]All statutory references are to the Vehicle Code unless otherwise specified.

Honda collided. Pater was uninjured, but the driver of the Honda, Norman Renquist, lay motionless and wedged into his car, which had been flattened during the crash. Renquist was pronounced dead at the scene. Pater reported the accident by radio and requested assistance.

Meanwhile, Handte followed the large American car through the toll booths at Coronado and flashed his bright lights off and on. When the American car stopped, Handte obtained the license plate number. The driver of the car started to get out of the car, but then stopped. Handte identified Minor as the driver of the car. Handte proceeded to the police station and provided police with the license plate number and a description of what occurred.

Approximately 10 or 15 minutes after the crash, the police arrived. As police directed traffic around the wreckage, Pater noticed a car, which had damage to the left front fender and its lights out, slowly approaching from Coronado. Pater also heard the scraping of the wheel in the wheel well on the car. Thinking that the car might have been involved in the initial collision with the Honda, Pater expected the car to pull around and stop where the police vehicles were parked, but the car did not stop. At trial, Pater identified a photo of Minor's car as the car that passed by him at the collision scene.

San Diego Police Officer Henry Ingram was on patrol in the early morning hours of December 27, 1991, in the area of Main and Division Streets. He heard a description of a hit-and-run vehicle broadcast over his radio and saw a vehicle matching the description at a Shell gas station. Ingram followed the vehicle for a quarter mile and at 1:45 a.m. stopped it on the onramp to Interstate 5 at Osborne Street and National City Boulevard. When Ingram asked Minor to step out of the car, Minor said he was unable to open the driver's side door because he had been involved in an accident. Minor also said he was headed back to the accident scene.

Handte was transported to the location where Ingram had stopped Minor. Handte identified Minor as the driver of the American car he had followed after the hit-and-run collision with the Honda. At that point, Minor was placed under arrest. Thereafter, California Highway Patrol Officer Thomas Englin noticed there was an odor of alcohol on Minor's breath, Minor's speech was rambling and slurred and his eyes were red and watery.

In response to questions from Englin, Minor admitted he had been driving and was involved in an accident. Minor also said he had two screwdrivers at the Trophy Lounge. Minor said he did not feel the effects of the alcohol.

Englin administered a series of field sobriety tests; Minor performed them poorly. A preliminary alcohol breath screening test showed Minor's blood-alcohol level to be .098 percent. Based upon Minor's involvement in a traffic collision, his physical objective symptoms of alcohol intoxication and his poor performance on the field sobriety tests, Englin concluded Minor was under the influence of alcohol.

A sample of Minor's blood was drawn at 4:14 a.m. on December 27, 1991. The blood-alcohol level was .10 percent. The medical technologist and forensic alcohol analyst opined that at 1:25 a.m. Minor's blood-alcohol level was .16 percent, assuming Minor weighed 160 pounds and last ate at 5 p.m. the previous evening.

California Highway Patrol Officer Jeffrey Scott Lierly, the prosecution's expert in accident reconstruction, testified Minor's car hit the Honda and was traveling 15 miles per hour faster than the Honda, which was traveling approximately 52 miles per hour.

Testifying in his own defense, Minor related that he, along with Brian Downing and Timothy Belmore, had driven from the North Island Naval Base, where they were stationed, to the Trophy Lounge in National City at approximately 9 p.m. on the evening of December 26, 1991. Minor testified he spent the evening shooting pool and drank two screwdrivers, finishing the second one as he left the bar. Minor testified he did not feel he was under the influence of alcohol when he began the drive back to Coronado. He drove in the slow lane on the Coronado Bridge at a speed of between 45 and 50 miles per hour and did not pass any cars. Minor said he saw the Honda two and one-half to three car lengths in front of him in the fast lane and then suddenly all he saw was "a jerk in my lane, we bumped, and I saw nothing else after that." While the Honda veered off to the left, Minor concentrated on keeping his car going straight. He proceeded to the toll booths, where he stopped and saw someone in a truck pointing at him. Minor attempted to get out of his car, but the door would not open and the window would not lower. Minor told Downing, "We've got to get back to the scene." Minor proceeded to Orange Street and turned around to return to the scene on the bridge and report his involvement in an accident. At this point, he did not know the Honda had been involved with a subsequent collision with oncoming traffic. As he passed the location on the bridge where he saw the Honda sticking out of a bus, Minor slowed down and tried to pull over, but the police officers on the scene motioned him to drive through and ordered him to leave. Minor, who said he was nervous and in shock, obeyed the officers and kept going.

Minor took the National City 8th Street exit and pulled over to a gas station at the suggestion of Downing, who said he should get a Coke to calm

his nerves before heading back to the scene. Minor and his companions were en route to the accident scene when Officer Ingram stopped the vehicle.

The defense accident reconstruction expert opined that the driver of the Honda had attempted to change lanes from the fast lane to the slow lane, and had lost control after hitting Minor's vehicle. The expert also opined the damage to Minor's vehicle was inconsistent with the sort of rear-end collision described by Handte.

## Discussion

### I

Minor contends the trial court committed reversible error by failing to explicitly instruct the jury that it had to find he committed a legal infraction other than driving under the influence to convict him of violating sections 23153, subdivision (a), and 23153, subdivision (b). The contention has merit.

Here, the trial court instructed the jury on vehicular manslaughter in pertinent part as follows:

"To constitute the crime of the vehicular manslaughter and felony driving under the influence, there must be in addition to the death of Mr. Renquist, an unlawful act which was the cause of that death.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"In order to prove the crime charged in Count 1 of vehicular manslaughter while intoxicated, the following elements must be proved:

"One, the driver of a vehicle violated Vehicle Code section 23153;

"Two, in addition to such violation, the driver of the vehicle committed an unlawful act, namely a violation of Vehicle Code 21658(a), Vehicle Code 22350, or Vehicle Code Section 22349, and

"Three, such an unlawful act was a cause of the death of a human being."

The trial court then gave instructions defining sections 22350 (basic speed law), 22349 (maximum speed law) and 21658 (laned roadway law). Immediately thereafter, the trial court continued the charge as follows:

"So I've given you the three laws that are the three vehicle code sections that can amount to an infraction which are included within the definition of vehicular manslaughter while intoxicated.

"Now, Mr. Minor is accused in Count 1 [*sic*] of the Information of having violated section 23153(a) of the vehicle code. It is a crime. Now, remember, going back to the definition, the first element was the driver of the vehicle must be proved beyond a reasonable doubt to have violated vehicle code Section 23153. And that's what I'm going to give you right now."

The trial court then proceeded to instruct on the elements of section 23153, subdivision (a), (CALJIC No. 12.60) as follows:

"Every person who, while under the influence of an alcoholic beverage, drives a vehicle and when so driving does an act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or negligence proximately causes bodily injury to any person other than himself is guilty of the crime of a violation of Section 23153 of the Vehicle Code.

"A person is under the influence of an alcoholic beverage when as a result of drinking such alcoholic beverage his physical and mental abilities are so impaired that he no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under same or similar circumstances.

"In order to prove such a crime each of the following elements must be proved:

"One, a person drove a vehicle while under the influence of an alcoholic beverage;

"Two, when so driving such person did some act which violated the law or failed to perform some duty required by law, and

"Three, as a proximate result of such violation of law or failure to perform such duty, another person was injured."

In a nutshell, Minor's argument is that the trial court should have repeated the definitional instructions on sections 22350, 22349 and 21658 specifically in conjunction with the charge given on section 23153. Failure to do so, Minor claims, allowed the jury to convict him of the section 23153 violations without finding a requisite element of the crime.

The law is clear that the elements of section 23153, subdivision (a), are as follows: (1) driving a vehicle while under the influence of an alcoholic beverage or drug; (2) when so driving, committing some act which violates

the law or is a failure to perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured. (*People* v. *Capetillo* (1990) 220 Cal.App.3d 211, 216 [269 Cal.Rptr. 250].) Section 23153, subdivision (b), has the same elements except the first element is expressed as driving a vehicle "while having 0.08 percent or more, by weight, of alcohol in his or her blood . . . ." (§ 23153, subd. (b).) To satisfy the second element, the evidence must show an unlawful act or neglect of duty *in addition* to driving under the influence. (*People* v. *Oyaas* (1985) 173 Cal.App.3d 663, 668 [219 Cal.Rptr. 243].)

Here, the section 23153 violations as charged in the amended information alleged Minor "in so driving did an act forbidden by law, to wit: VC21658(a), VC22350, VC22349, and neglected a duty imposed by law . . . ." An examination of the record shows the prosecution case was based on Minor violating these Vehicle Code sections—not on a negligence theory. In *People* v. *Gary* (1987) 189 Cal.App.3d 1212 [235 Cal.Rptr. 30], in which the defendant was charged with violating sections 23153, subdivision (a), and 23153, subdivision (b), the Court of Appeal held it was error not to define the three underlying Vehicle Code violations alleged in the information in conjunction with the two counts. (*Id.* at pp. 1216-1217.) "Here, by failing to instruct the jury on the charged acts forbidden by law, the trial court failed to instruct on an essential element of the offense." (*Id.* at p. 1217.)

Here, with respect to the felony drunk driving charges, the trial court read CALJIC No. 12.60, which includes only the phrase "did some act which violated the law or failed to perform some duty required by law . . . ." Because the trial court did not reference the applicable Vehicle Code violations with respect to Minor's felony drunk driving counts, the jury very well may have concluded it did not have to find any Vehicle Code violation to convict him on these counts.[3] Inasmuch as the jury could have convicted Minor without finding all of the requisite elements under this instructional charge, we are compelled to find error in this case. In circumstances such as

---

[3]Here, the jury acquitted Minor on the manslaughter charge, but convicted him of felony drunk driving, which are facially conflicting verdicts since the injury involved in this case—death—was common to both offenses. In essence, the defense case was that Minor did not commit the underlying Vehicle Code violations; the defense attacked the credibility of the prosecution's eyewitness, whom even the prosecutor referred to as "kind of a weird duck." Under the evidence presented, the jury could have found that Minor was driving with a blood-alcohol level greater than .08 percent when his car collided with the vehicle of the decedent. Moreover, the jury also could have had a reasonable doubt, as to the three Vehicle Code section violations, based upon problems with the credibility of the prosecution's eyewitness. This scenario would explain the acquittal on the vehicular manslaughter count and the convictions on the felony drunk driving counts.

this, where the prosecution is relying on specific code violations for both manslaughter and felony drunk driving, the trial court must make it clear to the jurors that they are required to find the code section violations for both offenses. In our view, CALJIC No. 12.60 should be adjusted accordingly in such cases.

The prosecutor's brief reference in her closing argument to the fact that felony drunk driving requires Vehicle Code violations—"Vehicular manslaughter requires vehicular code violation on the part of the defendant. So does driving under the influence, driving with a .08, the hit-and-run does not."—does not render the instructional error harmless in the face of the lengthy instructions by the trial court. As explained in footnote 3, *ante*, we cannot say the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

II*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The convictions for section 23153, subdivision (a), and section 23153, subdivision (b), are reversed.

Huffman, J., and Froehlich, J., concurred.

A petition for a rehearing was denied October 11, 1994.

---

*See footnote 1, *ante*, page 431.