[No. A127491. First Dist., Div. One. Feb. 25, 2011.]

In re F.H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
F.H., Defendant and Appellant.

## COUNSEL

Olga Kelley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

MARCHIANO, P. J.—While intoxicated and riding in the front passenger seat of a car, defendant F.H. grabbed the steering wheel and caused the car to crash. The driver was injured. The juvenile court found she had committed two misdemeanors, driving while under the influence causing injury (Veh. Code, § 23153, subd. (a)) and driving with a blood-alcohol level of 0.08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b)). Defendant contends there was insufficient evidence to support the convictions, primarily because she was not "driving" the car in the legal sense of the word. We disagree and affirm.

## I.  FACTS

On July 12, 2009, at approximately 3:00 a.m., Santa Rosa Police Officer Bryan Ellis was driving north on Fulton Road when he was flagged down by an adult male who stepped into the roadway. The man, Ricardo Mendoza, appeared "discombobulated." His hair stood straight up, dust covered his face, and his eyes were wide open. Officer Ellis concluded that Mendoza was in shock.

Mendoza told the officer he had been in a car accident and there was someone else still in the car. Officer Ellis put Mendoza in his patrol car, and Mendoza directed him to the accident scene several miles away, on Hall Road. When they arrived, Officer Ellis saw a car, which appeared to have rolled over several times, upside down in a ditch. Defendant was lying in the ditch about 20 yards from the car. She had urinated on herself, had scratches, and was covered in dirt. She told Officer Ellis her legs and back hurt.

California Highway Patrol Officer Robert Oates and his partner arrived and took over the investigation.[1] While he was being treated for his injuries by an ambulance crew, Mendoza told Oates that he had been driving on Hall Road at 30 to 40 miles per hour. He and defendant had been arguing. Defendant grabbed the wheel and yanked it, causing him to lose control and crash. As Mendoza described the accident to Officer Oates, defendant was placed in the ambulance. She said, "I did [it]. It was my fault."

Officer Oates spoke to defendant at the hospital. Her eyes were red and watery, her speech was slurred, and she smelled of alcohol. Defendant

---

[1] The accident scene was outside the Santa Rosa city limits.

admitted she was in the front passenger seat arguing with Mendoza, who was her boyfriend, when she angrily grabbed the steering wheel and turned it, causing the car to go out of control and crash.

Defendant admitted to Officer Oates that she drank five shots of alcohol—presumably hard alcohol—and some beer. She also admitted having smoked "a little bit of marijuana earlier." She exhibited horizontal gaze nystagmus. A preliminary test showed her blood-alcohol level was over 0.08 percent. Defendant's blood was drawn at 6:16 a.m. A blood test showed a blood-alcohol level of 0.10 percent.

Officer Oates concluded that by grabbing the steering wheel defendant in effect drove the car, thus interfering with the driver, Mendoza, and caused the accident by making an unsafe turning maneuver.

Mendoza told Officer Oates at the hospital that he felt pain in his shoulder and left side. Defendant suffered a broken leg and spinal injuries.

Defendant testified. She admitted drinking before she got into Mendoza's car. She remembered arguing with Mendoza. She did not remember touching the steering wheel, and believed she had "blocked some elements of" the accident.

The juvenile court found that defendant had committed two misdemeanors: driving while under the influence causing bodily injury (Veh. Code, § 23153, subd. (a)); and driving with a blood-alcohol level of 0.08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b)).[2] The court made defendant a ward of the juvenile court and placed her on home probation.

## II. DISCUSSION

Defendant contends there was insufficient evidence to support her convictions. The primary issue in this case is whether a passenger who grabs the steering wheel and thereby takes sufficient control of the vehicle to cause a crash is "driving" the car within the meaning of the Vehicle Code. There is no California case directly on point. We are persuaded, however, by out-of-state authority and a commonsense interpretation of the applicable statutes involving driving under these circumstances that the passenger assumed actual physical control of the vehicle, and therefore is considered to be driving it. Thus, we disagree with defendant and affirm for the reasons explained below.

Section 23153 proscribes driving under the influence and causing injury with two provisions of parallel structure.

---

[2] Subsequent statutory references are to the Vehicle Code.

Section 23153, subdivision (a) provides: "It is unlawful for any person, while under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."

Section 23153, subdivision (b) provides, in pertinent part: "It is unlawful for any person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."[3]

While subdivision (a) speaks in terms of both alcohol and drugs, we speak in terms of alcohol only because drugs are only peripherally involved in this case.

■ Subdivisions (a) and (b) have essentially four elements: (1) excessive alcohol intake, as differently defined by each subdivision; (2) driving a vehicle; (3) committing an act which violates the law or neglecting a duty imposed by law; and (4) causing bodily injury to another person. (See *People v. Minor* (1994) 28 Cal.App.4th 431, 437–438 [33 Cal.Rptr.2d 641] (*Minor*) [listing three elements, conflating (1) and (2) into one].)

Defendant does not expressly dispute the first element, and the evidence clearly shows she was both under the influence of alcohol in violation of subdivision (a), and had a blood-alcohol level of 0.08 percent or higher in violation of subdivision (b). Defendant contends that the evidence was insufficient to establish the second, third, and fourth elements of the offenses.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128 [113 Cal.Rptr.2d 27, 33 P.3d 450].) This standard applies to juvenile delinquency adjudications. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1].)

■ As noted, the primary issue in this case is whether defendant was driving the car. Section 305 defines "driver" as "a person who drives *or is in*

---

[3] For the sake of stylistic simplicity we will refer to section 23153, subdivision (a) as subdivision (a) and section 23153, subdivision (b) as subdivision (b).

*actual physical control* of a vehicle." (Italics added.) Judicial Council of California Criminal Jury Instructions (2011) CALCRIM No. 2241 elaborates: "A person drives a vehicle when he or she *intentionally causes it to move by exercising actual physical control over it*. The person must cause the vehicle to move, but the movement may be slight." (Italics added.)

There are no California cases involving the question whether a passenger who seizes the steering wheel and causes a crash is a "driver." But there are instructive cases involving two people agreeing to drive one car at the same time. In *In re Queen T.* (1993) 14 Cal.App.4th 1143 [17 Cal.Rptr.2d 922] (*Queen T.*), two intoxicated persons, one a minor, decided to drive a car in tandem. The driver operated the accelerator and brakes while the passenger steered because the driver did not know where to go. (*Id.* at pp. 1144–1145.) The court held that the passenger's "act of steering the car, although she was not operating the accelerator or brakes, renders her a 'driver' within the meaning of section[] 305 . . . ." (*Id.* at p. 1145.) That is, the act of steering the car placed the passenger in "actual physical control" of the vehicle.

Similarly, in *People v. Verlinde* (2002) 100 Cal.App.4th 1146 [123 Cal.Rptr.2d 322] (*Verlinde*), the passenger manipulated the steering wheel while the driver in concert operated the stick shift and the foot pedals. (*Id.* at pp. 1155, 1160.) Citing *Queen T.*, the court concluded that both the passenger and the driver were driving the vehicle within the meaning of the Vehicle Code. (*Verlinde, supra,* at p. 1160.)

Defendant distinguishes these two cases by arguing "there was no agreement and no cooperation" between her and Mendoza. While that may be true, the question remains whether, by her act of grabbing the wheel and causing the crash, defendant was driving the car. Out-of-state authorities persuade us that defendant was in "actual physical control" of Mendoza's car and was thus the "driver" within the meaning of section 305.[4]

These cases arise from states whose statutes define driving in terms of "actual physical control" of the vehicle similar to section 305 and CALCRIM No. 2241. In *In re Arambul* (1984) 37 Wn.App. 805 [683 P.2d 1123] (*Arambul*), the defendant was a passenger of a vehicle who grabbed the steering wheel, causing the vehicle to swerve left of center and strike an oncoming car, killing a passenger in the car with the defendant. (*Arambul, supra,* 683 P.2d at p. 1124.) The defendant argued she was not driving the vehicle "because she had no control of the gas, brake, or gearshift, and only

---

[4] We reject defendant's argument that the evidence does not show "whether [she] was, in fact, in actual physical control of the car or only grabbed [the steering wheel] for a second." There is substantial evidence that she grabbed the wheel and took actual physical control of the car to cause it to go into the ditch.

split-second contract with the steering wheel." (*Ibid.*) The Washington Court of Appeals rejected this argument, reasoning as follows: "The ordinary meaning of the term 'actual physical control' is 'existing' or 'present bodily restraint, directing influence, domination or regulation.' [Citations.] . . . The fact that [the defendant] did not have access to the accelerator or brakes did not affect her 'influence, dominion, or regulation' of the vehicle. The momentary duration of this dominion is insignificant; for that instant in time she directed the path of the automobile and caused the death of another." (*Id.* at p. 1125.)

In *Commonwealth Dept. of Transp. v. Hoover* (1994) 161 Pa.Commw. 517 [637 A.2d 721], a passenger grabbed the steering wheel and caused the vehicle to swerve toward a police cruiser. (*Id.*, 637 A.2d at p. 722.) The Commonwealth Court of Pennsylvania found the passenger was in actual physical control of the vehicle: " 'the vehicle was clearly in motion, and the action of the defendant in grabbing the steering wheel and causing the vehicle to swerve toward the police cruiser gave the defendant physical control of the movement of the vehicle.' " (*Id.* at p. 723.) The court noted that one did not have to sit in the driver's seat to be considered a driver of a vehicle. (*Ibid.*) " 'When a passenger in a vehicle chooses to engage in such foolish conduct as grabbing the steering wheel, . . . that person is assuming actual physical control over [the vehicle's] movement.' " (*Ibid.*)

In *Dugger v. Commonwealth* (2003) 40 Va.App. 586 [580 S.E.2d 477], the passenger "forcibly took control of the steering wheel from the driver and caused the vehicle to go off the road and into a guardrail." (*Id.*, 580 S.E.2d at p. 479.) The Virginia Court of Appeals found the passenger was in actual physical control of the vehicle. The court noted the purpose of the Virginia DUI (driving under the influence) statute is to "address[] . . . the risk of harm posed by vehicles under the control of intoxicated individuals," and that it did not matter whether the intoxicated individual was driving in the typical sense or controlling the car by grabbing the wheel. (*Id.* at p. 481.) "By forcibly taking the steering over from the driver, appellant manipulated perhaps the most fundamental feature of a moving vehicle—the direction in which it would travel. That deliberate act placed him in actual physical control of the vehicle." (*Ibid.*)

Finally, in *People v. Yamat* (2006) 475 Mich. 49 [714 N.W.2d 335] (*Yamat*), the defendant was a passenger in the vehicle his girlfriend was driving. During an argument between the couple, the defendant grabbed the steering wheel and "wrenched" it, causing the vehicle to veer off the road and strike a jogger. (*Id.*, 714 N.W.2d at p. 336.) A majority of the Supreme Court of Michigan found the passenger had actual physical control of the vehicle. (*Id.* at pp. 339–340.)

A dissenting opinion argued that the passenger was merely "hindering" the driver, not driving the car, because the passenger had no control over devices such as turn signals and headlights. (*Yamat, supra,* 714 N.W.2d at p. 340; see *id.* at p. 342 (dis. opn. of Kelly, J.).) The majority cogently responded: "Contrary to the dissent's arguments, the person who controls the steering wheel does ' "exercise restraint or direction over; dominate, regulate, or command" ' a vehicle. . . . Specifically, the person who controls the steering wheel, like defendant, can command the vehicle to go in any direction he or she chooses. Arguing and causing a distraction to the driver is 'hindering;' seizing the steering wheel when a car is in motion and causing the vehicle to change direction is an exercise of actual physical control." (*Id.* at p. 339, fn. 27, citation omitted.)

The majority continued: "It simply strains credulity for the dissent to suggest that because the defendant did not have control of every ancillary device, such as the windshield wipers, defendant's act of physically wrenching the steering wheel of the car was not an act of actual physical control. . . . Here, defendant grabbed the wheel of a *moving* vehicle and, in so doing, caused it to change direction. Defendant's action was one of 'control' in every sense of the word unless, as does the dissent, one requires that there be *complete* or *exclusive* control." (*Yamat, supra,* 714 N.W.2d at pp. 339–340, fn. 27.)

■ We agree with the reasoning of these four decisions.[5] Defendant here grabbed the wheel and caused the vehicle to change direction and crash. By that act she displaced the driver's control and operation of the vehicle and made herself the driver as she exercised actual physical control over the vehicle. There is thus sufficient evidence of the second element of the offenses, i.e., that defendant was driving a vehicle.

Likewise, there is substantial evidence of the third element, the commission of an unlawful act or neglect of duty which must be in addition to the act of driving while under the influence. (See *Minor, supra,* 28 Cal.App.4th at p. 438; *People v. Oyaas* (1985) 173 Cal.App.3d 663, 667–668 [219 Cal.Rptr. 243].) Officer Oates testified that defendant committed two unlawful acts: taking over the driving of the car, thus interfering with the driver, Mendoza; and causing the accident by making an unsafe turning maneuver. Defendant

---

[5] At oral argument, defendant relied on a fifth out-of-state decision, *West Bend Mutual Ins. Co. v. Milwaukee Mutual Ins. Co.* (Minn. 1986) 384 N.W.2d 877 (*West Bend*). This decision involved the interpretation of an insurance policy with regard to whether a passenger "operated" a vehicle. It did not involve a Vehicle Code statute defining driving as "actual physical control." (*West Bend, supra,* at pp. 878–880.) We believe insurance cases, and their concomitant rules of policy interpretation, are not persuasive in this context. The Supreme Court of Michigan (*Yamat, supra,* 714 N.W.2d at pp. 337–339) and the Court of Appeals of Washington (*Arambul, supra,* 683 P.2d at p. 1125, fn. 1) are in accord.

argues that she could not have been driving and at the same time interfering with the driver, because that would be tantamount to interfering with herself. This is a poor attempt at sophistry. Mendoza was driving until defendant interfered with him by usurping control of the car.

Finally, there is sufficient evidence of the fourth element, causing bodily injury to another person. The trier of fact could reasonably infer from all the evidence that Mendoza's injuries were caused by the accident. Mendoza's state of shock, left side and shoulder pain, and need for medical treatment show sufficient "bodily injury" within the meaning of the statutes. (See, e.g., *People v. Dakin* (1988) 200 Cal.App.3d 1026, 1034–1036 [248 Cal.Rptr. 206]; *People v. Lares* (1968) 261 Cal.App.2d 657, 661–662 [68 Cal.Rptr. 144].)

## III.  DISPOSITION

The findings and orders of the juvenile court are affirmed.

Margulies, J., and Banke, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 8, 2011, S191998.