Filed 4/15/14  P. v. Fujita CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MASAYUKI FUJITA,<br><br>    Defendant and Appellant. | B246069<br><br>(Los Angeles County<br>Super. Ct. No. BA381758)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed on April 15, 2014, be modified in the following particulars:

1.  On page 11, the Disposition is modified to read "The judgment of conviction is affirmed."

There is no change in the judgment.

_____
*EPSTEIN, P.J.,      WILLHITE, J.        MANELLA, J.

Filed 4/15/14  P. v. Fujita CA2/4 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B246069 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA381758) |
| v. | |
| MASAYUKI FUJITA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura Priver, Judge.  Affirmed.

Bruce Zucker for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

Masayuki Fujita appeals from his convictions of driving under the influence with injury and driving with a blood alcohol level of .08 or above with injury, in violation of Vehicle Code section 23153, subdivisions (a) and (b)[1].  He challenges the sufficiency of the evidence to establish that he failed to exercise due care while driving, an element of the offenses.  He also argues the trial court erred in refusing his special instructions.

Substantial evidence supports the convictions.  No instructional error is demonstrated.  We affirm the judgment.


**FACTUAL AND PROCEDURAL SUMMARY**

Noah Wood was at the intersection of Sunset Boulevard and Fountain Avenue at 12:50 in the morning of March 6, 2011.  He described the intersection as well lit.  He was looking across the intersection to a parking lot where a friend was going to park to meet him.  He saw two men standing in front of and to the left of him waiting for the traffic light to change.  When it changed, the two men "waited until it started to tick and indicated it was okay for them to cross at which point they began to proceed to cross [Sunset]."  They were walking at a normal pace, not running.  One man, identified, later as Keith Elmore, was slightly ahead of the other, Tyler Wasson.  Wood said the signal countdown at this crosswalk was about 35 seconds because it is a wide intersection.

As the men were crossing, Wood saw a black SUV approach the intersection from Fountain.  It entered the intersection to make a left turn onto Sunset to drive toward downtown Los Angeles.  The vehicle paused in the intersection for seven to eight seconds, as though waiting for the pedestrians to cross.  It then moved forward.  Elmore and Wasson appeared to be talking as they crossed, which gave Wood the impression that Elmore was not watching the SUV.  While in the crosswalk, Wasson saw the SUV start to cross and tapped Elmore on the shoulder and said "A car."  Elmore looked to his left and saw a black SUV coming.  He tried to jump out of the way.  As he did so, he touched

_____

[1] Statutory references are to the Vehicle Code, unless otherwise indicated.

the side of the SUV, slipped, and fell down.  According to Elmore, the SUV ran over his leg.

Wood was watching the pedestrian signal at the crosswalk.  It was a large sign which counted down the seconds remaining for a pedestrian to cross.  When the collision occurred, 19 seconds remained on the countdown.  When hit, Elmore was in the crosswalk, in the middle of the intersection.  According to Wood, the tires did not go over Elmore's leg.  Instead the leg was struck by the bumper.  Wood heard Elmore's bones break and shatter from his position on the sidewalk.

The SUV came to a stop.  Elmore was lying in the street screaming.  Bystanders went to the SUV to ensure the driver would not pull away before the police were notified.  Another group of people were tending to Elmore, moving him out of the street so he would not be struck again.  Eventually the driver of the SUV and two other males got out of the vehicle and stood on the sidewalk.  Wood identified appellant as the driver.

Paramedics and police officers responded to the scene.  Elmore was treated for an open fracture of the lower left leg, with both the tibia and fibula protruding through his skin.  The injuries were consistent with having been hit by a car.  He had consumed alcohol but according to the emergency room physician who treated him, was not drunk.  The physician said Elmore was able to conduct a conversation.  The emergency room doctor opined that Elmore's leg injury was more consistent with being hit by the bumper of a vehicle than being run over by a tire.  Surgery was performed on Elmore's leg.  He remained hospitalized for four days.  He used crutches for three weeks and wore a brace for more than four months.  Scars remained on his leg.

Police officers who responded to the scene noticed objective signs that appellant was intoxicated.  Appellant admitted he had been driving.  He failed to successfully complete field sobriety tests.  A portable breathalyzer screening performed on appellant at the scene produced a blood alcohol level of .126. at 1:45 a.m.  Appellant was arrested.  At the police station, a second breathalyzer test was performed, which indicated a blood alcohol level of .12 at that time.  Appellant was charged with one count of driving under the influence with injury in violation of section 23153, subdivision (a).  At the close of

3

the evidence, the information was amended to add count 2, driving with a blood alcohol level of .08 or above, with injury, in violation of section 23153, subdivision (b).  As to each offense it was alleged that appellant inflicted great bodily injury within the meaning of Penal Code section 12022.7, subdivision (a).

In his defense, appellant presented the testimony of Dr. Ralph Haber, an expert on eyewitness accuracy relevant to traffic accidents.

Appellant was found guilty as charged and the special allegations were found to be true.  He was sentenced to the high term of three years on count 1, violation of section 23153, subdivision (a).  Punishment on count two was stayed pursuant to Penal Code section 654.  Appellant was ordered to pay fines, fees and assessments.  He was awarded 35 days of presentence custody credit.  He filed a timely appeal.

## DISCUSSION

### I

Appellant was convicted of violating section 23153, subdivisions (a) and (b).  At the time of this offense, section 23153, subdivision (a) provided:  "It is unlawful for any person, while under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."  Section 23153, subdivision (b) provided in pertinent part:  "It is unlawful for any person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."

"[Section 23153 s]ubdivisions (a) and (b) have essentially four elements:  (1) excessive alcohol intake, as differently defined by each subdivision; (2) driving a vehicle; (3) committing an act which violates the law or neglecting a duty imposed by law; and (4) causing bodily injury to another person."  (*In re F.H.* (2011) 192 Cal.App.4th 1465,

4

1469.)  Appellant contests the sufficiency of the evidence of the third element.  He argues there was insufficient evidence that he failed to exercise ordinary care and maintain control of his vehicle.  He concedes the evidence was sufficient to prove the other elements.

When an appellant challenges the sufficiency of the evidence to support a conviction, "'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.]'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)  "'[W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.]'" (*Ibid.*)  "'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict. [Citation.]'" (*Ibid*, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357, italics omitted.)

The prosecution's theory was not based on appellant's commission of a specific unlawful act, but rather that he neglected the duty imposed by law to exercise ordinary care to avoid an accident and to maintain proper control of his vehicle.  The jury was so instructed in the language of CALCRIM Nos. 2100 and 2101.  These instructions also define ordinary care.

We agree with appellant that the facts that he was intoxicated and struck Elmore are not sufficient by themselves to establish that he failed to exercise ordinary care and maintain control of his vehicle.  The evidence also must prove that he did something a reasonably careful person would not have done or failed to do something a reasonable person would have done in addition to driving under the influence. (*People v. Minor* (1994) 28 Cal.App.4th 431, 437–438.)  In *People v. Minor*, the prosecution was based on the defendant's violation of three Vehicle Code sections alleged in the information, rather than on the negligence theory relied upon by the prosecutor here. (*Id*. at p. 438.)  The instructions on the section 23153 offenses did not include the definitions of the applicable Vehicle Code sections.  The court concluded:  "In circumstances such as this, where the

5

prosecution is relying on specific code violations . . . the trial court must make it clear to the jurors that they are required to find the code section violations for both offenses." (*Id.* at pp. 438–439.)

Appellant claims there is no evidence that he failed to exercise due care: "At some point, appellant then made his left turn at which time he struck Elmore. However, there are no details about the actual collision that suggest that appellant had failed to exercise due care. The only fact is that appellant struck Elmore." Appellant goes on to cite testimony by his expert witness that the cross-walk was not well lit and testimony that Elmore was not paying attention to the turning cars. He contends there was no evidence of other violations of due care such as speeding or running a red light.

Respondent argues that it is undisputed that appellant failed to make sure the crosswalk was free of pedestrians before driving through it, and failed to yield the right of way to Elmore. Even though appellant had stopped his car in the intersection as though waiting for pedestrians to cross, he resumed driving before Wasson and Elmore cleared the crosswalk, hitting Elmore. Section 21950, subdivision (a) imposes a duty on a driver to yield to a pedestrian: "The driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection . . . ." Subdivision (c) of the same statute emphasizes: "The driver of a vehicle approaching a pedestrian within any marked or unmarked crosswalk *shall exercise all due care and reduce the speed of the vehicle or take any other action relating to the operation of the vehicle as necessary to safeguard the safety of the pedestrian.*" (Italics added.)

Appellant argues that Elmore was responsible because he was not paying attention to the SUV, although he concedes: "This of course is not to say that the onus is on pedestrians to get out of the way of turning cars."

Subdivision (b) of section 21950 provides that the statute does "not relieve a pedestrian from the duty of using due care for his or her own safety." It states: "No pedestrian may suddenly leave the curb or other place of safety and walk or run into the path of a vehicle that is so close as to constitute an immediate hazard. No pedestrian may

6

unnecessarily stop or delay traffic while in a marked or unmarked crosswalk." But the Legislature made it clear that the duty imposed on the driver of a vehicle is not excused by a pedestrian's violation of section 21950, subdivision (b). Subdivision (d) of section 21950 states: "Subdivision (b) does not relieve a driver of a vehicle from the duty of exercising due care for the safety of any pedestrian within any marked crosswalk or within any unmarked crosswalk at an intersection."

Contrary to appellant's arguments, there is substantial evidence that he failed to exercise due care, satisfying the third element of the section 23153 violations. He drove into the crosswalk and hit Elmore. A reasonably careful person would not have done so. A reasonably careful driver would have seen Elmore, applied the brakes, and avoided the accident. The evidence supports appellant's conviction of violating both subdivisions (a) and (b).

## II

Appellant argues the trial court erred by refusing his special jury instructions Nos. 1 and 3 on the third element of section 23153 as well as on the statute prohibiting a pedestrian from entering a cross-walk when the upraised hand signal is flashing or steady.

"Pinpoint instructions 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case, such as mistaken identification or alibi. [Citation.] They are required to be given upon request when there is evidence supportive of the theory . . . .' [Citation.] For such a state law error, reversal is required only if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People v. Watson* (1956) 46 Cal.2d 818, 836.)" (*People v. Wilkins* (2013) 56 Cal.4th 333, 348–349.)

But a special instruction offered by the defense may be rejected as duplicative where the standard instructions given adequately instruct the jury on the issue. (*People v. Thomas* (2012) 53 Cal.4th 771, 825, 828; *People v. Dement* (2011) 53 Cal.4th 1, 57–58 [no error in refusing proposed instruction where existing instructions adequately covered issue].)

7

*A. Third Element*

The court gave the standard instructions on the section 23153 violations. CALCRIM No. 2100 instructed the jury on the elements of section 23153, subdivision (a). As to the third element, it stated: "3. While driving a vehicle under the influence, the defendant also committed an illegal act or neglected to perform a legal duty . . . ." It continued: "The People also allege that the defendant failed to perform the following legal duty while driving the vehicle: the duty to exercise ordinary care at all times and to maintain proper control of the vehicle. [¶] You may not find the defendant guilty unless all of you agree that the People have proved that the defendant committed at least one illegal act or failed to perform at least one duty. [¶] But you do not have to all agree on which act the defendant committed or duty the defendant failed to perform." The instruction defined ordinary care: "Using ordinary care means using reasonable care to prevent reasonably foreseeable harm to someone else. A person fails to exercise ordinary care if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation." The identical language also was included in CALCRIM No. 2101, which defined the elements of a violation of section 23153, subdivision (b).

The court rejected appellant's proposed special instruction which would have modified the language on the third element. We have italicized the addition suggested by appellant: "While driving a vehicle under the influence, the defendant also *concurrently* committed an illegal act or failed to perform a legal duty *in addition to and independent from the act of driving under the influence or causing bodily injury to another person* . . . . [¶] You may not find the defendant guilty unless all of you agree that the People have proved that the defendant committed at least one illegal act or failed to perform at least one duty—*other than drinking driving or causing injury to another person*." (Italics added.)

The trial court did not err in refusing this instruction. It was duplicative of CALCRIM No. 2100. CALCRIM No. 2100 clearly informed the jury that "*while driving a vehicle under the influence*" it had to find "the defendant *also* committed an illegal act

8

or neglected to perform a legal duty." (Italics added.) (*People v. Burney* (2009) 47 Cal.4th 203, 246 [trial court properly refused duplicative proposed instruction that "would not have provided the jury with anything beyond what it otherwise learned" from pattern jury instructions].) The standard instructions made it clear that more than drunk driving or injury to the victim is required to prove the charged offenses. They also clearly defined the ordinary care standard on which the prosecution relied.

B. *Pedestrian Duty*

Appellant argues the trial court erred in refusing his special instruction No. 3, taken from section 21456, subdivision (b), which provides: "No pedestrian shall start to cross the roadway in the direction of a pedestrian control signal indicating a flashing or steady 'Upraised Hand', but any pedestrian who has partially completed crossing shall proceed to a sidewalk or safety zone or otherwise leave the roadway while the 'WAIT' or 'DON'T WALK' or approved 'Upraised Hand' symbol is showing." His theory is that Elmore illegally crossed the street in violation of the flashing pedestrian signal and that this was an intervening cause that broke the chain of causation.

This theory is based on the premise that Elmore began crossing the street illegally after the pedestrian crossing light had started flashing. Elmore testified that the countdown on the pedestrian control light already had started when he stepped off the curb. Appellant cites the testimony of Dr. Ralph Haber, who testified about the accuracy of eyewitness identification in the context of traffic accidents. Dr. Haber visited the scene of the accident and examined the pedestrian traffic control lights at each crosswalk. He testified the intersection was not well-lit. Dr. Haber described the pedestrian control signals on the crosswalk used by Elmore: once the silhouette of a man in white comes on indicating a pedestrian may cross, it stays on for 6 seconds, then a countdown begins during which the light flashes for 25 seconds. Then a solid red hand appears with the text "Don't Cross." An additional 5 seconds is provided by the yellow traffic light preventing cars from entering the intersection. The crosswalk Elmore was in was 75 feet from curb to curb.

9

The instruction refused by the court read: "**Prohibition Against Entering Crosswalk While Facing Flashing or Steady Upraised Hand** [¶] No pedestrian shall start to cross the roadway in the direction of a pedestrian control signal indicating a flashing or steady 'Upraised Hand', but any pedestrian who has partially completed crossing shall proceed to a sidewalk or safety zone or otherwise leave the roadway while the 'WAIT' or 'DON'T WALK' or approved 'Upraised Hand' symbol is showing." The trial court reasoned that this instruction would confuse the jury because it did not state a defense to the charges "because under no circumstances can an individual be allowed to run over a pedestrian." The court also cited the testimony that Elmore stepped off the curb once the signal "turned okay to walk." The court observed that there was no evidence that Elmore was not appropriately in the crosswalk.

We find no error. First, we find no evidence that Elmore was illegally in the crosswalk, the predicate for the requested pinpoint instruction. (*People v. Wilkins*, *supra*, 56 Cal.4th at pp. 348–349.) In addition to the evidence mentioned by the trial court, witness Wood testified that when the light changed, Elmore and Wasson "waited until it started to tick and indicated it was okay for them to cross at which point they began to proceed to cross."

In any case, the court was correct in refusing the instruction. It was likely to have confused the jury. It is true, as appellant argues, that "an unforeseeable intervening cause, an extraordinary and abnormal occurrence" constitutes a superseding cause which breaks the chain of causation. (*People v. Armitage* (1987) 194 Cal.App.3d 405, 420–421; *People v. Autry* (1995) 37 Cal.App.4th 351, 361.) There was no evidence of such an extraordinary or abnormal intervening cause in this case. Elmore's conduct was foreseeable. In addition, as we have discussed, the driver of a vehicle is not relieved from the duty of exercising due care for the safety of any pedestrian within any marked crosswalk or any unmarked crosswalk at an intersection. No exception to this rule is provided based on the pedestrian light control law stated in section 21456.

10

*C. Ineffective Assistance*

Appellant argues his trial counsel was ineffective in failing to request an additional pinpoint instruction on his theory that an intentional but unforeseeable act by Elmore could have broken the chain of causation between appellant's drunk driving and the injury to Elmore. This is based on the theory that, contrary to California law, Elmore did not begin to cross the street until after the walk sign began flashing.

We have concluded that the trial court did not err in refusing the instruction on this theory. "Defendant's claim of ineffective assistance of counsel . . . must fail because his attorney cannot be considered ineffective for refusing to investigate and present a defense that, as a matter of law, was bound to fail." (*People v. Marlin* (2004) 124 Cal.App.4th 559, 570.)

## DISPOSITION

The judgment of conviction is confirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

11