Filed 3/2/21  P. v. Jackson CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EARLINE JACKSON,<br><br>        Defendant and Appellant. | A157892<br><br>(Contra Costa County<br>Super. Ct. No. 051722065) |

Earline Jackson hit a cyclist while driving under the influence of alcohol and a jury convicted her of two counts of driving under the influence and causing injury (Veh. Code, § 23153, subds. (a), (b)).[1]  Jackson appeals.  She contends there is insufficient evidence she committed an unlawful act or neglected a legal duty, an essential element of the convictions.  She also argues the trial court erred by excluding evidence the cyclist had drugs in his system at the time of the collision.

We affirm.

---

[1] Undesignated statutory references are to the Vehicle Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A.

### *Prosecution Evidence*

On a January 2017 evening, Joseph P. was driving toward the intersection of Pine Street and Paloma Court in Martinez. It was dark. Jackson was driving the same direction, about 75 or 80 feet in front of Joseph. Joseph saw a cyclist approaching the intersection from the opposite direction, traveling downhill. The bicycle had an illuminated headlight.

Joseph saw the cyclist "for a second." Then Jackson "turned left in front of" the cyclist. He hit the front of Jackson's car, and bounced off the windshield and into the air before landing on the street. The cyclist lay on the ground, bleeding, and moaning in pain. He was wearing dark clothing.

Both cars pulled over. Joseph called 911, then walked over to Jackson. He told Jackson to turn on her "lights because it was dark and nobody could see the [cyclist]." In an unsteady voice, Jackson replied: " '[l]ook what he did to my car.' " She did not acknowledge the cyclist lying in the street or what she had done to the bicycle, which was broken into pieces. Jackson seemed drunk: she was not "steady on her feet" and her speech was "slurred."

Police officers and emergency personnel arrived. A police officer spoke with Jackson. The officer thought Jackson was drunk because, among other things, she smelled of alcohol and her eyes were red and watery. Jackson failed several field sobriety tests. Believing Jackson was impaired, the officer administered a preliminary alcohol screening test; Jackson's breath registered blood alcohol levels of .095 and .099. The officer arrested Jackson for driving under the influence. Later, the officer gave Jackson a chemical breath test; it produced readings of .08 and .09. Jackson admitted drinking before the collision.

An ambulance took the cyclist to the hospital. The cyclist did not testify at trial. To prove the cyclist's injuries, the prosecution offered, and the court admitted, the cyclist's redacted hospital records.

## B.

### *Defense Evidence*

Physicist Paul Herman, Ph.D., testified as an expert witness in accident reconstruction. Herman reconstructed the accident at night, driving Jackson's car. He had a cyclist wearing black clothing ride a similar bike with a similar light. Herman determined Jackson and the cyclist were traveling within the speed limit: Jackson was driving 15 miles per hour and the cyclist was traveling 20 miles per hour. Herman concluded the first time Jackson could have seen the bicycle was one half to one second before the collision.

According to Herman, the combination of the poor lighting, the small light on the bike, and the lack of reflective material on the bicycle or the cyclist made it "basically impossible"—until the last half second—for Jackson to see the bicycle. Herman also suggested the cyclist should have ridden the bicycle "defensively" to avoid the collision.

## DISCUSSION

## I.

### *Substantial Evidence Supports the Convictions*

Jackson contends her convictions must be reversed because the prosecution "presented no evidence" she "drove in a negligent manner causing injury."

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that

3

is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

Under this deferential standard of review, "reversal 'is unwarranted unless it appears "that upon *no hypothesis whatever* is there sufficient substantial evidence to support" ' " the judgment. (*People v. Benner* (2010) 185 Cal.App.4th 791, 794, italics added.)

A.    Section 23153

"Section 23153 proscribes driving under the influence and causing injury." (*In re F.H.* (2011) 192 Cal.App.4th 1465, 1468 (*F.H.*).) Subdivision (a) makes it "unlawful for a person, while under the influence of any alcoholic beverage, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." Subdivision (b) makes it unlawful for a person, with a blood alcohol level of 0.08 percent "to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."

"Subdivisions (a) and (b) have . . . four elements: (1) excessive alcohol intake, as differently defined by each subdivision; (2) driving a vehicle; (3) committing an act which violates the law or neglecting a duty imposed

4

by law; and (4) causing bodily injury to another person." (*F.H., supra,* 192 Cal.App.4th at p. 1469.) The third element—committing an act which violates the law or neglecting a duty imposed by law—"must be in addition to . . . driving while under the influence." (*Id.* at p. 1472.)

" 'The unlawful act or omission "need not relate to any specific section of the Vehicle Code, but instead may be satisfied by the defendant's ordinary negligence." ' " (*People v. Givan* (2015) 233 Cal.App.4th 335, 349.) A driver has a duty to " 'exercise ordinary care at all times to avoid placing [herself] or others in danger; [and] to use like care to avoid an accident.' " (*People v. Oyaas* (1985) 173 Cal.App.3d 663, 669.) Ordinary care means using reasonable care to prevent reasonably foreseeable harm to someone else. A person fails to exercise ordinary care if she does something a reasonably careful person would not do in the same situation or fails to do something a reasonably careful person would do in the same situation. (CALCRIM No. 2100.)

### B. Substantial Evidence Demonstrates Jackson Drove Negligently by Turning into the Cyclist's Path

The prosecution's theory was that in addition to driving under the influence, Jackson was negligent, and that her negligence caused the accident. In closing argument, the prosecutor argued Jackson failed to use ordinary care when she hit the cyclist—who was "clearly visible"—as she made a left turn. According to the prosecutor, ordinary care meant, at minimum, "look[ing] to see if there's any oncoming traffic" before making the turn.

The jury agreed, and substantial evidence supports the jury's finding. Joseph testified he saw the cyclist before Jackson turned left. If Joseph—who was driving 75 to 80 feet behind Jackson—was able to see the cyclist, it was reasonable for the jury to conclude the cyclist was also visible to Jackson.

5

(*People v. DeSpenza* (1962) 203 Cal.App.2d 283, 288–289 (*DeSpenza*) [defendant drove negligently when he hit a parked truck, which was "clearly visible" from approximately 100 feet]; *People v. Walker* (1968) 266 Cal.App.2d 562, 564, 569 [defendant's failure to see pedestrian supported inference of negligent driving].)

Joseph's testimony also created a reasonable inference that had Jackson "exercis[ed] due care and attention," she would have seen the cyclist and waited for him to pass before making the turn, or swerved to avoid him, and that her failure to do so "constituted negligence." (*DeSpenza, supra,* 203 Cal.App.2d at pp. 288–289.) Joseph's testimony was sufficient to support the convictions; it was not necessary, as Jackson seems to suggest, for the prosecution to offer physical evidence or expert testimony to prove she failed to exercise ordinary care. (*People v. Jones* (2013) 57 Cal.4th 899, 963 [unless " 'physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction' "]; *F.H., supra,* 192 Cal.App.4th at p. 1472 [testimony that defendant caused car to make an "unsafe turning maneuver" was sufficient to support "unlawful act" element].)

Relying predominately on the testimony of her expert witness, Jackson argues she "exercised ordinary care and could not have avoided the collision." This contention is not persuasive. In performing substantial evidence review, we "must assume in favor of the judgment the existence of every fact reasonably deducible from the evidence." (*DeSpenza, supra,* 203 Cal.App.2d at p. 288.) And as discussed above, reasonable inferences from Joseph's testimony demonstrate Jackson neglected a duty imposed by law. (*F.H., supra,* 192 Cal.App.4th at p. 1472.) Additionally, the trier of fact "is the exclusive judge of the credibility of witnesses, the resolution of factual conflicts and the weight to be accorded the evidence and the facts to be

6

reasonably deduced therefrom." (*DeSpenza,* at p. 288.)  In finding Jackson guilty, the jury rejected the expert's testimony; we cannot reweigh the evidence or substitute our inferences for those of the jury.  (*Id.* at p. 291; *People v. Oyaas, supra,* 173 Cal.App.3d at p. 668 [deferring to lower court's finding that defendant "drove erratically"].)

Jackson's reliance on *People v. Ferrara* (1988) 202 Cal.App.3d 201 and *People v. Thurston* (1963) 212 Cal.App.2d 713 does not alter our conclusion. In *Ferrara*, there was no evidence the defendant "drove in an unlawful manner" because the trial court had determined the defendant did not run a red light.  (*Ferrara,* at pp. 206–207.)  No such factual finding was made here and, as discussed above, the evidence supports the jury's conclusion that Jackson failed to exercise ordinary care by turning into the cyclist's path. *Thurston* is also distinguishable.  In that case, the defendant crashed into a parked car, but "no one saw the accident" or "the manner in which [the defendant] was driving."  The appellate court held the mere fact of the collision did not establish the defendant drove negligently.  (*Thurston,* at pp. 715–717.)  Here, Joseph witnessed the collision; his testimony supports the jury's conclusion that Jackson was negligent.

## II.

### *Admitting the Cyclist's Redacted Hospital Records Was Not an Abuse of Discretion*

Jackson argues the court erred by excluding evidence the cyclist had drugs in his system on the night of the collision.  According to Jackson, the cyclist's "drug use" was admissible to show he "proximately caused the accident and his own injuries."

A.    Background

The prosecution offered the cyclist's hospital records to prove his injuries but sought to redact information that he had amphetamines in his

system. Defense counsel objected to the redaction, arguing the presence of drugs in the cyclist's blood was relevant to show he failed to take "defensive measures" to avoid the collision. The court granted the prosecution's request and redacted the records. It noted there was no evidence the cyclist was riding "in any way that reflected impairment" and explained there was a "high risk of confusing . . . and misleading the jurors by suggesting that [the cyclist's] blood test is connected to his driving pattern, which is connected to the cause of this accident, without there being any evidence of that."

B.      The Evidentiary Ruling Was Not an Abuse of Discretion

Under Evidence Code section 352, a trial court " 'enjoys broad discretion in determining the relevance of evidence and in assessing whether concerns of undue prejudice, confusion, or consumption of time substantially outweigh the probative value of particular evidence.' " (*People v. Sanchez* (2019) 7 Cal.5th 14, 54.) We review a trial court's decision to exclude evidence under Evidence Code section 352 for abuse of discretion. (*Sanchez*, at p. 54.) We will not disturb the court's decision " 'except on a showing [that] the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Peoples* (2016) 62 Cal.4th 718, 745.)

It is well settled " 'that contributory negligence is not available as a defense or excuse for crime.' [Citation.] The conduct of the victim or other third persons, whether negligent or even criminally proscribed, is not, in itself, a defense to crime." (*People v. Schmies* (1996) 44 Cal.App.4th 38, 46 [reasonableness of third party's conduct was "not in itself an issue" in prosecution for vehicular manslaughter].) A victim's negligence will "exonerate the defendant only if it was the sole proximate cause of the accident." (*People v. Pociask* (1939) 14 Cal.2d 679, 687; *Schmies*, at p. 46

8

[third party's conduct is relevant "only to the extent that it tends to prove or disprove an element of the crime or a recognized defense"].)

Here, evidence of amphetamines in the cyclist's system had little—if any—probative value.  The evidence did not tend to negate the causation element, e.g., show the cyclist was the sole proximate cause of the collision, because there was no evidence the cyclist was impaired or riding in an unsafe manner.  To the contrary, the evidence demonstrated the cyclist was riding within the speed limit, on a bike with an illuminated headlight.  He was visible from at least 75 to 80 feet away.  Herman's suggestion that the cyclist should have ridden the bicycle "defensively" did not tend to show the cyclist was the sole proximate cause of the collision.

The court did not err by concluding, pursuant to Evidence Code section 352, that any minimal probative value was outweighed by the risk of "confusing . . . and misleading" the jurors.  Admitting evidence of the victim's blood test would necessitate a trial within a trial on a collateral matter, and would risk confusing the jury on the issues in the case:  whether Jackson was negligent, and whether her negligence proximately caused the cyclist's injuries.  (*People v. Pociask, supra*, 14 Cal.2d at p. 687.)  The exclusion of evidence of minimal probative value pursuant to Evidence Code section 352 " ' "does not impermissibly infringe on a defendant's right to present a defense." ' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 998, 999; *People v. Smith* (2017) 10 Cal.App.5th 297, 305 [excluding evidence helpful to defendant did not preclude him from mounting a defense in DUI prosecution].)

DISPOSITION

The judgment is affirmed.

_____
                                   Seligman, J.*

WE CONCUR:


_____
Needham, Acting P. J.


_____
Burns, J.


A157892


_____
     * Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10