PER CURIAM.
This case concerns the appropriate interpretation of the definition of “operate” in the Michigan Vehicle Code.[1] The Court of Appeals panel below interpreted the statute to essentially require exclusive control of a motor vehicle, and upheld the circuit court’s affirmance of the district court’s decision to quash the felonious driving charge against defendant. We hold that the plain language of the statute requires only “actual physical control,” not exclusive control of a vehicle. Because the prosecutor has shown probable cause that defendant was in actual physical control of the vehicle at the time of the incident, we reverse the judgment of the Court of Appeals and remand for trial.
FACTS AND PROCEDURAL HISTORY
For purposes of the preliminary examination, the parties stipulated to the following facts: Defendant was a passenger in the vehicle his girlfriend was driving. As she drove, the couple argued. During the argument, defendant grabbed the steering wheel and turned it. When the defendant wrenched the steering wheel, the vehicle veered off the road, struck a jogger and caused the jogger severe injuries.
The prosecutor charged defendant with one count of felonious driving.[2] However, the district court refused to bind defendant over for trial after the preliminary examination because it concluded that the prosecution *52 had not established that the statute proscribed defendant’s conduct. The circuit court affirmed the district court’s decision because defendant did not have complete control of the vehicle’s movement. The Court of Appeals affirmed in a published opinion per curiam,[3] holding that defendant was merely interfering with his girlfriend’s operation of the vehicle, but was not operating the vehicle himself. The prosecutor sought leave to appeal, and this Court scheduled and heard oral arguments on whether to grant the application.[4] In lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and remand for trial.[5]
STANDARD OF REVIEW
This Court reviews questions of statutory interpretation de novo.[6] In order to bind a defendant over for trial, the prosecutor must establish probable cause, which requires a quantum of evidence “ ‘sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief ” of the accused’s guilt on each element of the crime charged.[7] A district court’s decision declining to bind a defendant over is reviewed for an abuse of discretion.[8]
ANALYSIS
The felonious driving provision of the Michigan Vehicle Code provides:
*53 A person who operates a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, carelessly and heedlessly in willful and wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner that endangers or is likely to endanger any person or property resulting in a serious impairment of a body function of a person, but does not cause death, is guilty of felonious driving punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.[9]
The issue in this case is whether defendant was “operating” the vehicle within the meaning of the statute. To ascertain the meaning of a statutory term, this Court construes the term reasonably, according to its plain and ordinary meaning.[10] The Michigan Vehicle Code specifically defines “operate” as “being in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur.” [11] Similarly, the code defines “operator” as “every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway.”[12] The Court of Appeals accurately quoted the relevant statutory definitions and utilized a dictionary definition in order to ascertain the common meaning of “control.” The panel held that “control” “means ‘power or authority to guide or manage.’ ”[13] We agree that this is an appropriate definition of the statutory term “control.” However, the panel did not correctly apply the common *54 meaning of the statutory terms to the facts in this case. Instead, the panel concluded that “[although defendant’s act caused the vehicle to veer off the road, defendant did not have the actual physical control of the vehicle, i.e., the power or authority to guide or manage the vehicle.”[14] On the contrary, we hold that causing the vehicle to change direction and “veer off the road” squarely meets the statutory requirement of actual physical control, which is understood to mean the “power ... to guide” the vehicle.[15]
Compounding its erroneous application of the common understanding of the statutory terms at issue, the Court of Appeals panel looked beyond the appropriate defined meaning of “operate” to examine how that term had been interpreted in a case involving an insurance contract. The Court of Appeals panel cited Farm Bureau Gen Ins Co v Riddering[16] to buttress its conclusion that “actual physical control” of a vehicle requires control over “all functions necessary to make the vehicle operate.”[17] In Riddering, a woman grabbed the steering wheel of the car in which she was riding, causing the car to collide with a tree. The other passengers in the car sustained severe injuries and filed an action against her. The woman’s homeowner’s insurance provider refused to defend the lawsuit because the policy specifically excluded coverage for liability arising *55 out of the “operation” of a vehicle. The Riddering panel held that the insurer must provide coverage, reasoning that “[operation includes control over all the parts that allow the vehicle to move, not just the steering function.”[18] Therefore, the panel concluded that the woman was not “operating” the vehicle for purposes of the insurance policy.
The Court of Appeals panel below found Riddering “analogous” and held that a “passenger who grabbed and turned the steering wheel without permission was interfering with the operation of the vehicle, not operating it.”[19] The Court of Appeals panel erred in relying on Riddering because Riddering is entirely inapposite for a number of reasons.[20] First, basic principles of statutory construction require that courts construe statutory terms according to their plain or common meanings.[21] As noted, the Michigan Vehicle Code defines “operate” as “actual physical control.” Because the insurance policy did not use that definition, the Riddering panel never discussed the plain or common meaning of “actual physical control.” As such, the Riddering panel’s interpretation of the undefined word “operate” in the insurance contract is not pertinent to an interpretation of the statutorily defined term “operate.”
*56 Second, the Riddering panel arrived at its conclusion that the contract term “operate” meant “complete control” of the vehicle because, misapplying the contra proferentem principle for contract interpretation,[22] they construed the term “narrowly” and against the insurance company. The Riddering panel erred in resorting to this principle without first concluding that the term “operate” in the contract was ambiguous.[23] Regardless of the proper application of specific rules of construction applicable to contracts, when construing statutes, our obligation is to construe the statutory term reasonably, according to its plain and ordinary meaning.[24]
Where, as here, the statutory terms are not ambiguous and are susceptible to a plain reading, in construing the statutory term “operate,” there is no principled basis for resorting to an inapposite insurance case as an aid to construction as suggested by the panel below and the dissent. The definition of “operate” contained in the Michigan Vehicle Code requires the exercise of “actual physical control” over a motor vehicle.[25] Unlike the Court of Appeals, we cannot conclude that the statute effectively requires exclusive control “of all the functions necessary to make the vehicle operate,” because *57 such a construction does not comport with the plain language of the statutory definition.[26]
As applied to the facts of this case, defendant’s act of grabbing the steering wheel and thereby causing the car to veer off the road clearly constitutes “actual physical control of a motor vehicle.”[27] Utilizing the proper statu *58 tory definition of “operate,” the prosecutor has clearly established sufficient probable cause that defendant violated MCL 257.626c. Because the district court applied an erroneous definition of the term “operate,” it abused its discretion by refusing to bind defendant over for trial at the preliminary examination. We therefore reverse the judgment of the Court of Appeals and remand this case for trial.
Taylor, C.J., and Corrigan, Young, and Markman, JJ., concurred.

 MCL 257.1 et seq.

 MCL 257.626c.

 People v Yamat, 265 Mich App 555; 697 NW2d 157 (2005).

 474 Mich 859 (2005).

 MCR 7.302(G)(1).

 People v Jones, 467 Mich 301, 304; 651 NW2d 906 (2002).

 People v Yost, 468 Mich 122, 126; 659 NW2d 604 (2003), quoting People v Justice (After Remand), 454 Mich 334, 344; 562 NW2d 652 (1997).

 People v Goecke, 457 Mich 442, 463; 579 NW2d 868 (1998).

 MCL 257.626c.

 Veenstra v Washtenaw Country Club, 466 Mich 155, 160; 645 NW2d 643 (2002); MCL 8.3a.

 MCL 257.35a.

 MCL 257.36. See also MCL 257.13, which provides, “ ‘Driver’ means every person who drives or is in actual physical control of a vehicle.”

 Yamat at 557, quoting Webster’s New Collegiate Dictionary (1980).

 Yamat at 557.

 While “control” is the critical component of the statutory definition, the definition also includes the words "actual,” which means “existing in act, fact, or reality; real,” Random House Webster’s College Dictionary (1997), p 14, and “physical,” which means “of or pertaining to that which is material,” Id. at 983. These definitions lend further support to the conclusion that defendant’s act of grabbing the steering wheel and wrenching it conform to the statutory definition of “operate.”

 172 Mich App 696; 432 NW2d 404 (1988).

 Yamat at 558.

 Riddering at 703 (emphasis added).

 Yamat at 558, citing Riddering at 703.

 Unlike the dissent, we are hard-pressed to hold “that the law laid down in Riddering would affect this defendant’s understanding of what constitutes a crime under the circumstances of this case.” Post at 67. Surely, it is one of the stranger ideas the dissent has offered to suggest that, in the heat of an argument with his girlfriend, defendant wrenched the steering wheel of a moving vehicle in “reliance” on a Court of Appeals decision construing an insurance contract that he was not “operating” the vehicle within the meaning of the Michigan Vehicle Code. .

 MCL 8.3a; Nastal v Henderson & Assoc Investigations, Inc, 471 Mich 712, 720; 691 NW2d 1 (2005).

 The contra proferentem principle is “[u]sed in connection with the construction of written documents to the effect that an ambiguous provision is construed most strongly against the person who selected the language.” Black’s Law Dictionary (5th ed), p 296.

 Id.

 Sotelo v Grant Twp, 470 Mich 95, 100; 680 NW2d 381 (2004).

 Remarkably, the dissent accuses the majority of ignoring the statutory definition of “operate,” yet the dissent approves of the Court of Appeals reliance on extraneous case law that construes the term “operate” in an insurance contract without reference to the statutory definition of “operate.”

 The dissent claims that we misconstrue the Court of Appeals decision by suggesting that it required “exclusive control” as a predicate for “operating” the vehicle. While the panel did not use the word “exclusive,” that is surely the import of its reliance on Riddering’s test that required “control over all the parts that allow the vehicle to move, not just the steering function.” Riddering at 703. This is amplified by the panel’s own holding that “[defendant could not have stopped or started the vehicle, nor could he have caused it to increase or decrease in speed. Defendant could not use any of the vehicle’s other instruments; therefore he was not in actual physical control of the vehicle.” Yamat at 557.
The dissent would also require “exclusive control” because Justice Kelly finds persuasive the fact that the defendant had no “control” over even ancillary devices such as the turn signal and windshield wipers to demonstrate why his actions did not satisfy the Michigan Vehicle Code. Justice Kelly asserts that she does not advocate “exclusive control” because “[i]f two or more individuals agree to work the components of a vehicle together, then each is an operator.” Post at 70. While the dissent’s “cooperative operation” theory does not meet a strict definition of “exclusive,” it still requires a concerted effort to control all of the vehicle’s instruments. In fact, applying the dissent’s construction, because neither the driver nor the defendant had complete control over all of the car’s devices, nor agreed to work together, no one was operating this vehicle at the time it struck the jogger. Justice Kelly claims that the majority has incorrectly applied her analysis because defendant’s girlfriend remained in “control” despite defendant’s “interference.” It is difficult to square the dissent’s claim that the girlfriend was in control, despite not having control over the steering wheel, with the dissent’s argument that defendant did not have control because he could not control the vehicle’s ancillary devices. Clearly, defendant exercised the “power to guide” the vehicle, which is the plain meaning of control that the Court of Appeals cited and we adopt. It is the dissent that refuses to give “control” its natural meaning by requiring exclusive or complete control.

 Under the dissent’s construction of this phrase, when defendant grabbed the steering wheel and turned it, causing the vehicle to veer off *58 the road and strike a jogger on the side of the road, he was merely “hindering” his girlfriend’s control over the vehicle because “he could not have activated the headlights or turn signals.” Post at 63. Contrary to the dissent’s arguments, the person who controls the steering wheel does “ ‘exercise restraint or direction over; dominate, regulate, or command’ ” a vehicle. Post at 60 (citation omitted). Specifically, the person who controls the steering wheel, like defendant, can command the vehicle to go in any direction he or she chooses. Arguing and causing a distraction to the driver is “hindering;” seizing the steering wheel when a car is in motion and causing the vehicle to change direction is an exercise of actual physical control.
It simply strains credulity for the dissent to suggest that because the defendant did not have control of every ancillary device, such as the windshield wipers, defendant’s act of physically wrenching the steering wheel of the car was not an act of actual physical control. The dissent’s analysis is not advanced by suggesting that one who turns the steering wheel of a parked vehicle cannot exercise control. Post at 65. Here, defendant grabbed the wheel of a moving vehicle and, in so doing, caused it to change direction. Defendant’s action was one of “control” in every sense of the word unless, as does the dissent, one requires that there be complete or exclusive control.