# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

ALI ZAID,

       Defendant-Appellee.

UNPUBLISHED
May 26, 2015

No. 320197
Oakland Circuit Court
LC No. 2013-009924-AR

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

    The prosecution appeals by leave granted the circuit court's order that affirmed the district court's decision not to bind defendant over on the charge of possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). The basis for the district court's ruling was that the search of defendant's vehicle that led to the discovery of the marijuana was unconstitutional, in that there was an underlying *Miranda*[1] violation and the police lacked probable cause to conduct the search under the circumstances presented. And absent consideration of the marijuana and other potentially incriminating evidence found during the search, the district court concluded that there was no probable cause to bind defendant over on the drug charge. We reverse and remand for reinstatement of the charge and arraignment in the circuit court on the felony information.

    On October 16, 2012, a veteran Troy police officer pulled defendant's car over for a traffic violation, and there is no dispute that the officer had the legal authority to make the stop. Defendant was the lone occupant of the vehicle. The police officer claimed that during the stop he smelled "an overpowering odor of [unburned] marijuana" emanating from defendant's car, which odor the officer was quite familiar with due to his experiences as an officer for over 25 years. The officer also took notice of a backpack on the front passenger seat and pointedly asked defendant how much marijuana he possessed in the car. Defendant informed the police officer that he had medical marijuana cards issued under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*[2] Defendant presented the officer with three cards showing

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] This opinion will use an "h" when spelling marihuana only when directly quoting from the MMMA; otherwise, we will employ its more common spelling using a "j."

defendant's designation as a medical marijuana primary caregiver for a male and two females, but one of the cards had expired. See MCL 333.26423(h) (defining "primary caregiver"). Defendant also gave the police officer his own medical marijuana card, showing defendant to be a qualifying patient. See MCL 333.26423(i) (defining "qualifying patient").

The officer and defendant proceeded to discuss medical marijuana and the amount of marijuana that defendant could legally possess under the law. Generally speaking, defendant was allowed to possess 7.5 ounces of usable marijuana based on the three valid cards. See MCL 333.26424(a) (a qualifying patient may possess "an amount of marihuana that does not exceed 2.5 ounces of usable marihuana"); MCL 333.26424(b) (a primary caregiver may possess an amount of marijuana that does not exceed "2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the department's registration process").[3] Defendant, who had been ordered by the officer to keep his hands hanging outside of the driver's side window, told the officer that he indeed possessed marijuana in the car that he had purchased for $2,000 and that while he did not know the total weight of the marijuana, *it was more than he was permitted to possess under the law*.[4]

The police officer then awaited backup, and when it arrived, the officer conducted a search of defendant's car. Defendant was told to step out of his car, and he was placed in the backseat of a police cruiser. In searching defendant's vehicle, the officer found marijuana in the backpack, packaged in various-sized plastic baggies. The quantity of marijuana totaled 1.6 pounds or about 25 ounces; more than three times the amount defendant was legally entitled to possess. The officer also discovered a scale and a box containing Ziploc baggies. He additionally found a firearm magazine holding 13 bullets in the center console of the car, but a firearm was not located. The police officer also discovered a marijuana "roach" in the ashtray of the car. Defendant was then arrested, and a search of his person produced $1,143 in cash. A field test conducted at the police station confirmed that the substance found in defendant's car was marijuana.

A police lieutenant testified at the preliminary examination as an expert in street-level narcotics trafficking, opining that defendant had been engaged in the sale and trafficking of marijuana, as based on the discovery of the marijuana, the amount of marijuana, the use and sizes of the plastic baggies, the scale, and the large amount of cash.

During the preliminary examination, defendant argued, contrary to the claim of the police officer who conducted the stop and search of defendant's car, that there was evidence suggesting that the officer did not truly detect the odor of marijuana, e.g., video/audio recordings reflecting no mention of a marijuana odor to a dispatcher or the backup officer, and therefore the search

---

[3] Usable marijuana is defined as "the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks, and roots of the plant." MCL 333.26423(k).

[4] At the preliminary examination, the police officer testified, "He [defendant] told me he had more marijuana tha[n] he was allowed." At another point in the hearing, the officer similarly testified, "He, eventually, told me he had more than he was supposed to have."

was not actually conducted on that basis. Defendant further contended that his statement about having more marijuana than permitted by law could not be considered, given that the statement was made in violation of defendant's *Miranda* rights, where it was elicited as part of a custodial interrogation. Defendant maintained that absent the statement, and considering that the claim by the officer that he detected the odor of unburned marijuana was not credible, there was a lack of probable cause to justify the search. And absent consideration of the fruits of the unconstitutional search – the marijuana and related items – there was no probable cause to bind defendant over to the circuit court for trial on the drug charge. The prosecutor agreed that defendant's *Miranda* rights were violated and that defendant's statement about having too much marijuana was subject to suppression. However, the prosecutor argued that the officer's detection of the strong odor of marijuana provided probable cause to conduct the search and that the evidence was more than sufficient to establish probable cause that a crime was committed and that defendant committed the crime, thereby mandating a bindover.

The district court refused to bind defendant over to the circuit court on the charge of possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). With very little elaboration, the district court concluded that without defendant's statement that he had more marijuana than was permissible, the case should not be bound over. The prosecution appealed the district court's decision to the circuit court. Most of the parties' arguments were the same as those made to the district court, but defendant now also argued that, with respect to the alleged odor of marijuana detected by the officer, the odor did not support a finding of probable cause to search, given that the officer knew based on the medical marijuana cards that defendant was legally allowed to possess marijuana. The circuit court affirmed the district court's decision, primarily on the basis of its belief that the district court had made a credibility determination that rejected the officer's testimony about smelling the marijuana, which credibility assessment the circuit court was not prepared to second-guess. The prosecution appeals by leave granted.

Ultimately, this appeal concerns whether the search of defendant's car was constitutionally sound, such that the marijuana and other items found as a result of the search can be considered in determining whether there existed probable cause to bind defendant over on the drug charge. We hold that the search did not violate defendant's constitutional rights and that there was sufficient evidence to bind defendant over to the circuit court. We decline to address whether the mere odor of marijuana can justify a search of a motor vehicle when an occupant holds a valid medical marijuana card and is permitted to possess a certain amount of marijuana.[5] Rather, we conclude that defendant's statement that he had more marijuana than legally allowed provided probable cause to search defendant's vehicle regardless of any *Miranda* violation. We note that this opinion does not examine the correctness of the district court's *Miranda* ruling, only the implications flowing from that ruling.

---

[5] We note that a couple of months after the vehicle stop involved here, the Legislature enacted MCL 750.474, which makes it a misdemeanor to transport or possess usable marijuana, as defined in the MMMA, in a motor vehicle unless it is "[e]nclosed in a case that is carried in the trunk of the vehicle" or "[e]nclosed in a case that is not readily accessible from the interior of the vehicle, if the vehicle . . . does not have a trunk." 2012 PA 460, effective December 27, 2012.

A trial court's factual findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).[6] "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). We give deference to a trial court's credibility determinations regarding witnesses testifying on a suppression issue. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313. The Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11, secure the right of the people to be free from unreasonable searches and seizures. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). The touchtone of any Fourth Amendment analysis is reasonableness, and reasonableness is measured by examination of the totality of the circumstances. *Williams*, 472 Mich at 314.

There was no search warrant involved in this case, but "[o]ne of the well-established exceptions to the warrant requirement is known as the automobile or motor vehicle exception," which "is premised on an automobile's ready mobility and pervasive regulation[.]" *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). "A police officer who witnesses a person violating . . . [the Motor Vehicle Code] . . ., which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check, and prepare and subscribe, as soon as possible and as completely as possible, an original and 3 copies of a written citation[.]" MCL 257.742(1). A traffic stop is generally not unlawful and does not violate the Fourth Amendment if the officer conducting the stop has probable cause or a reasonable and articulable suspicion to believe that a violation of the Motor Vehicle Code had been committed or was occurring. *People v Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002); *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999). Again, there is no dispute here that the officer had a valid basis to stop defendant's vehicle predicated on a violation of the Motor Vehicle Code.

In *Williams*, 472 Mich at 315, our Supreme Court discussed the nature and scope of a valid traffic stop, recognizing that circumstances can evolve once a motorist is stopped for a traffic violation that may justify further inquiry:

> A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period. The determination whether a traffic stop is reasonable must necessarily take into account the evolving circumstances with which the officer is faced. . . . [W]hen a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised. [Citations omitted.]

---

[6] Although technically there was not a "suppression" hearing, the district court relied on the testimony presented at the preliminary examination, which is an evidentiary hearing, in making a suppression ruling.

In the present case, a new set of circumstances developed or evolved after the valid stop, where the officer smelled unburned marijuana, defendant presented medical marijuana cards, the officer and defendant discussed medical marijuana and permissible quantities under the MMMA, and where defendant expressed that he had more marijuana than permitted by law. This ultimately led to the search of defendant's car and the discovery of an excessive amount of marijuana and alleged drug paraphernalia. The question becomes whether the police officer had probable cause to conduct the search as based on the evolving set of circumstances. See *Kazmierczak*, 461 Mich at 420-421, 420 n 8 (given that the traffic stop was permissible when the officer observed a traffic violation, the next question to ask is whether there was probable cause to search the vehicle).

"Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place." *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001). An officer's ulterior motives or subjective intentions generally play no role in analyzing whether probable cause existed under the Fourth Amendment; rather, the analysis entails an objective review of the facts and circumstances, and an objectively valid search remains legal regardless of subjective motives or intentions. *People v Wilson*, 257 Mich App 337, 355-356; 668 NW2d 371 (2003), vacated in part on other grounds 469 Mich 1018 (2004). When a police officer with previous experience in marijuana investigations credibly testifies to smelling a strong odor of marijuana emanating from a vehicle, probable cause to search the vehicle exists. *Kazmierczak*, 461 Mich at 421-422. *Kazmierczak*, however, was decided before the electorate approved the MMMA in 2008 pursuant to a citizen's initiative. See *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012). For purposes of our analysis, we shall *assume* that the odor of marijuana is not sufficient to support probable cause to conduct a search if possession of some amount of marijuana is permissible under the MMMA. To emphasize, we make no ruling on this matter, and this opinion is not to be construed as holding that the odor of marijuana, in and of itself, cannot serve as probable cause when a person holds a valid marijuana registration card; we merely find it unnecessary to answer that question.[7]

---

[7] We are compelled to discuss the issue regarding the credibility of the police officer's testimony about smelling marijuana. The district court did not expressly indicate that it found the officer's testimony lacking in credibility on the issue, although perhaps it might be implied, given that the district court appeared to give no weight or consideration to the officer's testimony concerning the odor of marijuana in ruling that the exclusion of defendant's incriminating statement fully justified its decision not to bind over defendant. It is equally possible that the district court believed the officer about the marijuana odor, but concluded, without stating so on the record, that the odor alone was not sufficient to support the search. This situation shows why it is important for lower courts to provide some minimal elaboration on their rulings so as to allow sound appellate review. Considering that there is no dispute that the officer asked defendant how much marijuana he had in his possession, that the officer and defendant engaged in a discussion of medical marijuana and allowable quantities, and that defendant provided the officer with his registration cards, we find it inconceivable that the officer had not smelled any marijuana, otherwise what else could possibly have triggered the whole marijuana question and discussion

We conclude that probable cause to search defendant's vehicle arose on the basis of defendant's concession that he had more marijuana than legally permissible under the MMMA. In *Kolanek*, 491 Mich at 394, the Michigan Supreme Court analyzed the MMMA, stating:

> The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of [the MMMA]." [Citations omitted; alteration and emphasis in original.]

Accordingly, by indicating to the police officer that he had an amount of marijuana that was not in accordance with the MMMA, defendant provided the officer with probable cause to search the vehicle. The question becomes whether the *Miranda* violation in connection with the elicitation of the statement of admission precludes consideration of the statement in the context of determining whether probable cause existed to conduct the vehicle search.

In *People v Melotik*, 221 Mich App 190, 199; 561 NW2d 453 (1997), this Court favorably quoted *United States v Patterson*, 812 F2d 1188, 1193 (CA 9, 1987), stating:

> "Patterson's statements were elicited even though Patterson was not advised of his *Miranda* rights. *Miranda* violations do not abridge the Fifth Amendment constitutional privilege against self-incrimination, but instead involve prophylactic standards laid down to safeguard that privilege. Statements obtained in violation of *Miranda* may not be admitted against the accused, at least in the prosecution's case in chief. 'But the *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted.' The . . . 'fruits of the poisonous tree' doctrine does not control where there is no constitutional violation."

In *United States v Patane*, 542 US 630, 636-637, 641-642; 124 S Ct 2620; 159 L Ed 2d 667 (2004), the United States Supreme Court similarly held:

> As we explain below, the *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause. The Self–

---

and the presentation of the registration cards. We thus tend to believe that the district court accepted the testimony of the officer that he smelled marijuana on arriving at defendant's vehicle. But *assuming* that the district court dismissed the officer's testimony on the matter as not being credible, and appreciating that we generally defer to a factfinder's assessment of credibility, this is one instance in which the presumed credibility assessment is not entitled to deference, as it is inherently implausible and illogical. See *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (discussing exceptions to the general rule of deference regarding credibility determinations).

Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context. And just as the Self–Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution . . . by mere failures to warn. For this reason, the exclusionary rule . . . does not apply.

. . .

Our cases . . . make clear . . . that a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule. . . .

It follows that police do not violate a suspect's constitutional rights . . . by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by *Miranda*. Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, "[t]he exclusion of unwarned statements is a complete and sufficient remedy" for any perceived *Miranda* violation. [Citations omitted; alteration in original.]

Here, there is no claim or evidence that defendant's statement about possessing too much marijuana was involuntary or coerced; therefore, there was no constitutional violation and the sole remedy for the *Miranda* violation is exclusion of the statement at trial. The statement is not otherwise to be discarded, as, for example, in relation to providing probable cause to search defendant's car, and the ultimate physical fruits of the statement, i.e., the marijuana and other potentially incriminating evidence, are admissible in court. Objectively viewed and regardless of the officer's subjective motivation or intentions, probable cause to search defendant's car flowed or arose from defendant's statement that he indeed possessed more marijuana than permitted by law, which in turn led to the discovery of the marijuana and other evidence. If physical evidence discovered as a result of a statement given in violation of *Miranda* is admissible, such a statement can certainly also serve as a basis to find the underlying probable cause necessary to conduct the search that led to the discovery of the physical evidence. It would be nonsensical and wholly undermine the principles set forth in *Melotik* and *Patane* to conclude that an un-Mirandized statement, for example one that informs police that a murder weapon was discarded in a certain location, cannot be considered in determining whether there is probable cause to search that location in the first place. In sum, defendant's statement here that he had more marijuana than permitted by law should have been considered by the district court in determining whether there was probable cause to search defendant's car. We note that defendant never argued that he did not make the statement. Further, the statement clearly provided probable cause for the officer to search defendant's car. The district court erred in ruling otherwise, and the circuit court erred in affirming the district court's erroneous decision.

Finally, taking into consideration the marijuana found in defendant's car, the weight of the marijuana, which exceeded the permissible amount under the MMMA, and the other evidence discovered in defendant's car that suggested he was engaged in the illegal trafficking and sale of marijuana, all provided more than sufficient evidence to conclude that there was probable cause that the charged drug offense was committed and that defendant committed the

offense. Accordingly, the district court abused its discretion in failing to bind defendant over for trial in the circuit court, and the circuit court erred in affirming the district court's erroneous decision.[8]

Reversed and remanded for reinstatement of the charge under MCL 333.7401(2)(d)(*iii*) and arraignment in the circuit court on the felony information. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

---

[8] A district court's decision to bind a defendant over for trial is reviewed for an abuse of discretion. *People v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006); see also *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). A circuit court's decision concerning a district court's bindover ruling is reviewed de novo. *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000). Therefore, this Court "gives no deference to the circuit court's decision." *People v Henderson*, 282 Mich App 307, 313; 765 NW2d 619 (2009). Rather, this Court "reviews the bindover decision de novo to determine whether the district court abused its discretion." *Id*. The purpose of a preliminary examination is to determine whether there is probable cause to believe both that an offense has been committed and that it was committed by the defendant. MCL 766.13; MCR 6.110(E). Probable cause is established by evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that a crime was committed and committed by the defendant. *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotations and citation omitted). The prosecutor must present evidence showing each element of the crime charged or evidence from which the elements can be inferred, although the evidence need not establish guilt beyond a reasonable doubt. *People v McBride,* 204 Mich App 678, 681; 516 NW2d 148 (1994).