# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

STEVEN JEROME GOODMAN,

Defendant-Appellee.

UNPUBLISHED
October 10, 2017

No. 332763
Wayne Circuit Court
LC No. 16-001486-01

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

The prosecution charged defendant with first-degree premeditated murder, MCL 750.316(a), being a felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b, stemming from the shooting death of defendant's girlfriend, Chantel Carrington. Following a preliminary examination, the district court bound defendant over for trial, but the circuit court subsequently quashed the information on sufficiency of the evidence grounds. We reverse and remand for trial.

## I. BACKGROUND

The last time anyone saw Chantel Carrington alive was her birthday—June 6, 2015. She attended a party at a local park with defendant and two of his friends. Carrington allegedly left before her companions. Carrington's neighbors, William Crenshaw and Willie Plummer, testified that they drank beer and socialized with Carrington and other local residents on the front steps of Carrington's apartment building that evening. Crenshaw saw Carrington get into defendant's car and drive away around 9:00 or 10:00 that night. Plummer had gone inside to watch television, but came out in time to see defendant driving away with Carrington in the passenger seat.

The next day, defendant contacted Carrington's sister and claimed that he had not seen Carrington since the party at the park the previous day. The two drove around the park looking for Carrington. Five days later, Carrington's sister filed a missing person report. On July 14, Detroit police found Carrington's body at an abandoned home near East Alexandrine and Chene. The house was the only remaining structure on the block, the area was covered in long grass, and the nearest business was a sizable distance away. Carrington lay partway through a basement window, with her legs inside the home and her torso out. She "was in [a] state of advanced

-1-

decomposition," but fully clothed and still wearing jewelry. She was killed by a gunshot wound to the chest.

Sergeant Michael McGinnis analyzed defendant's cell phone records to determine where his phone was at the time estimated to correspond with Carrington's murder. At 11:52 p.m. on June 6, defendant placed a call that was initially serviced by a tower approximately one mile from where Carrington's body was found, then later serviced by a different tower. McGinnis explained that when a call starts on one tower and ends on another, it could mean that the caller moved geographically during the call. This could also occur if the initial tower became overloaded, requiring some calls to be switched. Tower records revealed that the tower near Carrington's body was not overly busy that night. The call was also initiated on the same side of the tower as Carrington's body. Accordingly, defendant could be placed with reasonable certainty within a one mile radius of where Carrington's body was found.

In interviews with the police, defendant claimed he was home on the evening of June 6. Despite that his phone had been some distance away at 11:52 p.m., defendant asserted that he never loaned out his cell phone. And defendant admitted that he and Carrington had a "nasty" relationship that included domestic violence. Moreover, Plummer testified that a few days after Carrington's disappearance, defendant tried to sell him two guns.

## II. ANALYSIS

"Generally, a circuit court's decision to grant a motion to quash a felony information is reviewed de novo to determine if the district court abused its discretion in ordering a bind over." *People v Grayer*, 235 Mich App 737, 739; 599 NW2d 527 (1999). A district court abuses its discretion when it "selects an outcome falling outside the range of principled outcomes." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012).

At the preliminary examination in the district court, the prosecution must present sufficient evidence for the court "to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2002). The prosecution is not held to the higher beyond-a-reasonable-doubt standard necessary to convict. *Id*. "[P]robable cause . . . requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt on each element of the crime charged." *People v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006) (quotation marks and citations omitted). "Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support the bindover of the defendant if such evidence establishes probable cause." *People v Brown*, 239 Mich App 735, 741; 610 NW2d 234 (2000).

Defendant does not contest that Carrington was killed by a gunshot to the chest.[1] He contends, and the circuit court agreed, that the prosecution failed to establish probable cause to

---

[1] Defendant therefore did not seek to quash the information by arguing that he did not possess a weapon. As such, we need not consider the propriety of binding defendant over on the two weapons charges.

believe that he killed Carrington and that he did so with premeditation. The circuit court erred in finding a lack of evidence supporting defendant's identity as Carrington's killer. Crenshaw and Plummer both saw defendant drive away with Carrington at approximately 9:00 or 10:00 p.m. on June 6. Defendant's cell phone records place him in the area where Carrington's body was found at 11:52 p.m. Defendant lied to police and claimed he was home that night, an area far removed from the murder site. Defendant also lied to Carrington's sister, reporting that he had not seen Carrington since the afternoon of June 6, and securing her assistance in the fool's errand of searching for Carrington at a park. This evidence, and the reasonable inferences arising from it, was sufficient to establish probable cause on the issue of identity.

The prosecution also created probable cause to believe that defendant acted with premeditation.

> Premeditation and deliberation require sufficient time to allow the defendant to take a second look. The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. [*People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995) (citations omitted).]

Defendant and Carrington had only recently reconciled and he told the police that their relationship was "nasty" and marked by violence. Given the location of Carrington's body, it is reasonable to conclude that the killer purposefully transported her to a secluded location. Carrington died from a gunshot wound to the chest. This Court has found sufficient evidence of premeditation where a defendant uses an "inherently dangerous instrument[]" to inflict damage "primarily directed toward vital organs." *People v Kvam*, 160 Mich App 189, 193-194; 408 NW2d 71 (1987). And if the jury ultimately believes that defendant committed the murder, his feigned ignorance of Carrington's whereabouts and search efforts will be highly relevant to establish his state of mind.

As the prosecution established probable cause to believe that defendant killed Carrington with premeditation, the district court properly bound defendant over for trial and the circuit court erred in quashing the bindover. We reverse and remand for trial. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle