*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DENZEL DANAGELO TATE,

        Defendant-Appellee.

UNPUBLISHED
January 26, 2023

No. 359578
Wayne Circuit Court
LC No. 19-006103-01-AR

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Defendant, Denzel Danagelo Tate, was the subject of a police investigation based upon the belief that he was consuming marijuana in a public place, MCL 333.27954(1)(e), which is a civil infraction. See MCL 333.27965(1). The encounter ended with defendant's arrest for assaulting, resisting, or obstructing a police officer, MCL 750.81d, which is a felony offense. Consequently, the resulting charges against defendant for assaulting, resisting, or obstructing a police officer gave him the right to a preliminary examination. The district court refused to bind over defendant on the two charges against him for assaulting, resisting, or obstructing a police officer because, in the district court's view, the initial stop was constitutionally suspect. The circuit court agreed, ruling that the constitutionally defective stop foreclosed the prosecution from charging defendant for his resistance of the officers. Because we conclude that the initial investigative stop was permissible, we reverse and remand for further proceedings on the two charges against defendant.

## I. FACTUAL BACKGROUND

On June 13, 2019, two law-enforcement officers were on patrol in a marked police car in the city of Detroit. As the officers drove past defendant's car parked on a public street, they saw defendant "in the driver's seat with it leaned back really far." The officers took note of the vehicle because of "the odor of marijuana," "there was smoke coming from the car," and the occupants' "actions on the inside of the car seemed to be very elusive." Specifically, defendant was "[t]rying to hide" from the officers. The officers ran a check on the car's license plate and learned that there was no insurance on the vehicle. As a result, the officers "did a quick U-turn" to come back to the

-1-

vehicle. Both occupants of the car then "jumped out of the car very suspiciously" and "took off at a quick walk towards an apartment complex door" and "went up to the door."

The officers left their patrol car, followed defendant to the door of the apartment complex, and asked defendant to produce identification. One of the officers—Corporal Thomas Anton— instructed defendant "you got to give me your ID and he refused to cooperate with anything that [Corporal Anton] was doing" and Corporal Anton could "smell the odor of marijuana on his person at that point." Defendant "became disorderly" and belligerent. "He started shouting and his voice kept getting louder." Corporal Anton responded by putting a handcuff on defendant as defendant "started wrestling" with him. Meanwhile, two other people who were there with defendant "kept interfering and getting in between" defendant and Corporal Anton and grabbing Corporal Anton's "hands and arms trying to pull [him] away from" defendant. As Corporal Anton tried to move the encounter with defendant to a safer area, defendant jumped forward "right into a bush," where the officers finally were able to place handcuffs on him. After the police officers secured defendant, they went back to his car and found marijuana in the vehicle.

During the preliminary examination on July 29, 2019, the prosecution requested a bindover on two charges of assaulting, resisting, or obstructing a police officer. Defendant objected to the request for a bindover, insisting that "[t]here was no probable cause . . . to investigate to start with." The district court refused to bind over defendant, stating that "the stop was illegal" because there was "no reason . . . for the officer to turn his vehicle around, especially with the testimony that the vehicle was not even running or on, and to further ask any questions of defendant." In response, the prosecution appealed the district court's decision to the circuit court, which affirmed the district court's ruling denying the request for a bindover based on constitutional flaws in the investigation. The prosecution thereafter filed a claim of appeal by leave granted from the circuit court's order affirming dismissal of the charges.[1]

II. LEGAL ANALYSIS

On appeal, the prosecution asserts that the lower courts erred by denying the request for a bindover and dismissing the charges of assaulting, resisting, or obstructing a police officer against defendant. Absent an abuse of discretion, this Court will not disturb a bindover decision. *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016). An abuse of discretion occurs when the decision falls outside the range of principled outcomes. *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018). But if a lower court bases its ruling on determinations of law, we must review that ruling de novo. *Id.*

The outcome of this appeal does not turn upon the adequacy of the evidence presented to support the charges of assaulting, resisting, or obstructing a police officer. Indeed, if we review the evidence of the entire encounter from start to finish, there can be no doubt that the prosecution offered "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt on each element of the crime charged." *People*

---

[1] See *People v Tate*, unpublished order of the Court of Appeals, entered May 16, 2022 (Docket No. 359578).

*v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006); *People v Hudson*, 241 Mich App 268; 615 NW2d 784 (2000) (citing MCL 766.13). The prosecution need not prove each element beyond a reasonable doubt; it simply must present some evidence of each element. *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). This the prosecution plainly did at the preliminary examination. As we have explained, even when the evidence conflicts or raises a reasonable doubt, the defendant should still be bound over for resolution of the questions by the trier of fact. *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010). Despite adequate evidence to support the bindover of defendant, the district court concluded (and the circuit court agreed) that the investigative stop was constitutionally infirm, so everything that happened after that initial constitutional violation could not be considered in the bindover decision.

As a matter of law, we find no constitutional fault with the police officers' actions in the leadup to defendant's resistance. To be sure, the constitutions of the United States and the State of Michigan guarantee a right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. But there are three levels of citizen-police contact, and each one of the three comes with its own standards for police conduct. First, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen[.]" *Florida v Royer*, 460 US 491, 497; 103 S Ct 1319; 75 L Ed 2d 229 (1983). Second, a police officer "can stop and briefly detain a person for investigative purposes" based on "reasonable suspicion," which "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "less demanding than that for probable cause[.]" *United States v Sokolow*, 490 US 1, 7; 109 S Ct 1581; 104 L Ed 2d 1 (1989). Third, detention at the level of a full-blown arrest does not require a warrant, but it does require probable cause. *United States v Watson*, 423 US 411, 417-418; 96 S Ct 820; 46 L Ed 2d 598 (1976). Significantly, although the second and third levels of citizen-police contact both involve seizures, see *Royer*, 460 US at 498, those two types of citizen-police contact require different levels of suspicion to justify the seizure, i.e., reasonable suspicion for investigative detentions versus probable cause for full-blown arrests.

In this case, the police officers who confronted defendant not only had detected the scent of marijuana, but also had observed smoke coming from the vehicle, defendant leaning back in his car seat to try to hide from the officers, and defendant hurriedly leaving the car and walking away from the officers in the direction of the apartment building. Although the scent of marijuana in and of itself does not supply probable cause to make an arrest, see *People v Armstrong*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360693); slip op at 6, it may "give rise to probable cause [if] it is combined with other factors that bolster the concern about illegal activity that may flow from the smell of marijuana." *Id.* Here, the prosecution simply has to establish that the officers' observations gave rise to reasonable suspicion of illicit activity, not probable cause, in order to justify the investigative stop of defendant. As a matter of law, the prosecution satisfied that obligation. Because the two officers had reasonable suspicion to stop defendant long enough to conduct an investigative detention, defendant's defiant response cannot be excused based upon a violation of the United States and Michigan constitutions.

Because the lower courts erred as a matter of law in concluding that the police officers had no constitutionally sound basis to detain defendant for an investigative stop based upon reasonable suspicion, their decision to dismiss the two charges against defendant for assaulting, resisting, or

obstructing a police officer rest upon a flawed premise that the officers engaged in unconstitutional conduct.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto